AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

FILED
FEB - 5 2024
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM  DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)* )
iPhone and PCD cellphone belonging to ESCALANTE, Junior Bryan )
iPhone belonging to ALVAREZ-Sanchez, Jose Angel )

Case No. 24-1192MB

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Arizona_____
*(identify the person or describe the property to be searched and give its location)*:
As described in Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___2/19/2024___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   any U.S. Magistrate Judge in the District of Arizona.   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  2/5/2024 at 2:50 pm        _____/s/_____
                                                  *Judge's signature*

City and state:   Yuma, Arizona                James F. Metcalf, United States Magistrate Judge
                                                  *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched are two iPhones and one PCD cellphone (hereafter the "SUBJECTS' CELLULAR TELEPHONE"). The SUBJECTS' CELLULAR TELEPHONE is currently located at 4035 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECTS' CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECTS' CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324 (and any applicable subsections), including alien-smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

    a. all information related to the bringing in, harboring, or transportation of illegal aliens;

    b. all bank records, checks credit card bills, account information, or use of proceeds from illegal smuggling activities including, but not limited to, real estate, vehicles, rental agreements, clothing, furniture, and electronic equipment;

    c. all bank records, checks, credit card bills, account information, or other financial records;

    d. any records indicating sources, types, amounts, and prices of fees associated with the smuggling or harboring of illegal aliens as well as dates, places, and amounts of specific transactions;

    e. any records or information relating to domestic and international travel, including schedules, appointments, gas receipts, notes, letters, airline tickets, bus tickets, food receipts, hotels, lodging receipts, and related correspondence

    f. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses;

    g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    h. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECTS' CELLULAR TELEPHONES showing who used or owned the device at the time the things

described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

FILED ___ LODGED
___ RECEIVED ___ COPY
FEB - 5 2024
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM DEPUTY

| | |
|---|---|
| In the Matter of the Search of Three Cellular Telephones:<br><br>iPhone and PCD cellphone belonging to ESCALANTE, Junior Bryan<br>iPhone belonging to ALVAREZ-Sanchez, Jose Angel | Case No. 24-1192MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

Located in the District of Arizona, there is now concealed:

The person or property to be searched, described above, is believed to conceal:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transport Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Brian Ramos**

☒ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Louis Uhl

*Louis Uhl*

*Brian Ramos*
*Applicant's Signature*

Brian Ramos, Border Patrol Agent-Intelligence
*Printed name and title*

_____
*Judge's signature*

Subscribed and sworn telephonically before me.
Date: 2/5/2024

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

City and state: Yuma, Arizona

## **ATTACHMENT A**

*Property to be searched*

The property to be searched are two iPhones and one PCD cellphone (hereafter the "SUBJECTS' CELLULAR TELEPHONE"). The SUBJECTS' CELLULAR TELEPHONE is currently located at 4035 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECTS' CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECTS' CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324 (and any applicable subsections), including alien-smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

    a. all information related to the bringing in, harboring, or transportation of illegal aliens;

    b. all bank records, checks credit card bills, account information, or use of proceeds from illegal smuggling activities including, but not limited to, real estate, vehicles, rental agreements, clothing, furniture, and electronic equipment;

    c. all bank records, checks, credit card bills, account information, or other financial records;

    d. any records indicating sources, types, amounts, and prices of fees associated with the smuggling or harboring of illegal aliens as well as dates, places, and amounts of specific transactions;

    e. any records or information relating to domestic and international travel, including schedules, appointments, gas receipts, notes, letters, airline tickets, bus tickets, food receipts, hotels, lodging receipts, and related correspondence

    f. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses;

    g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    h. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECTS' CELLULAR TELEPHONES showing who used or owned the device at the time the things

described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Border Patrol Agent-Intelligence (BPA-I) Brian Ramos, being first duly sworn, hereby deposes and states as follows:

### I.  INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, for a search warrant authorizing the examination of the cellular devices (hereinafter SUBJECTS' CELLULAR TELEPHONE), described below and in Attachment A, and the extraction of electronically stored information from that property, as further described in Attachment B. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the property listed in Attachment A, I have set forth only the facts that I believe are necessary to establish probable cause to believe evidence of violations of Title 8 United States Code, Sections 1324(a)(1)(A)(ii) and (iii) (transportation and harboring of aliens) is contained in the property described below and in Attachment A.

2. I am a BPA-I with Department of Homeland Security/Office of Border Patrol (DHS/OBP), Yuma Sector Intelligence Unit. I have been a BPA since June 2, 2008, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit.

3. On August 21, 2008, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I've been permanently assigned to three Border Patrol Stations in three different sectors. These stations include Naco Station in Tucson Sector, Calexico Station in El Centro Sector, and Yuma Station in Yuma Sector. I am member of the United States Border Patrol Wellton Intelligence Collections Unit (WEL-ICU), in which I've gained much experience in the operations of various illicit smuggling organizations in various regions of the United States. I have been exposed to casework involving both alien and narcotics smuggling cases, along with the legal guidelines associated with this line of work. I have also gathered and interpreted criminal records, interviewed multiple principals and material witnesses, and properly executed the dissemination of information through the proper channels.

4. I routinely conduct surveillance and counter surveillance to protect operational integrity and security, as well as investigate violations of federal law. I access multiple databases and intelligence-based systems and through my investigations, I have assisted in interagency and

international investigations, as well as applied additional charges to defendants that field agents were not aware of at the time of apprehension.

5. By virtue of my duties as an Intelligence Agent, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; and (b) interviewing witnesses, cooperating sources and sources of information relative to the smuggling of aliens and the distribution of monies and assets derived from the smuggling of aliens (to include the laundering of alien smuggling proceeds).

6. While conducting alien smuggling investigations, I have personally interviewed persons involved in the smuggling of aliens. I have consulted with other experienced investigators concerning the practices of alien smugglers and the best methods of investigating them. This Affidavit contains facts based both on my personal knowledge, and on information that I have obtained by conferring with other special agents and law enforcement officials involved in this investigation.

7. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

8. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

**II.     BASIS FOR PROBABLE CAUSE**

9. Border Patrol Agent - Intelligence (BPA-I) Brian Ramos assigned to the WEL-ICU. The WEL-ICU is composed of four BPA-I's and one (1) Supervisory Border Patrol Agent - Intelligence (SBPA-I). WEL-ICU is experienced in the identification of undocumented non-citizens (UN) and narcotic smuggling operations. This unit focuses on conducting counter network operations by identifying smugglers (foot guides, load drivers, facilitators, coordinators, and stash houses) and targeting their organizations that operate in the Yuma Sector's area of operations (AO). As part of the daily duties, the unit is tasked with interviewing detainees, conducting

surveillance, and conducting in depth analytical research. The WEL-ICU efforts are focused on identifying and prosecuting smugglers, and disrupting, dismantling, and degrading the organizations in which they work for. WEL-ICU conducts daily operations in plain clothes and unmarked vehicles.

10. On January 30, 2024, at approximately 0006 hours a Border Patrol Agent (BPA) assigned to Wellton Border Patrol Station, Yuma Sector, observed five subjects coming out of the mountains east of Avenue 15 E and north of County 14. The BPA observed two vehicles on Karimme Avenue, one facing north and the other south. The five subjects ran to the vehicles where three entered one vehicle and the other two entered the other vehicle. BPAs were able to maintain visual of both vehicles as they drove in opposite directions. A BPA followed the vehicle that drove north. This vehicle was a Honda Accord bearing Arizona license plate H0A03P. The Honda Accord drove through the neighborhood before coming to a complete stop on El Camino Del Diablo. The BPA activated his emergency lights. Both rear doors of the Honda Accord opened and two subjects jumped out and began to run. The Honda Accord continued to drive with the doors open. The BPA deactivated his lights and followed the Honda Accord in a safe distance through the Foothills and into Yuma city limits until the National Guard Helicopter (Lakota) was able to gain visual of the vehicle. The Honda Accord stopped in an apartment complex parking lot on South Avenue 15 and 5th Street. The LAKOTA was able to guide the BPA to the location of the Honda Accord. The BPA located the Honda Accord and the driver and ordered him to the ground. The driver, later identified as (MILLAN, Ismael Saddam) threw his phone on the ground, thus abandoning it, in an apparent attempt to destroy potential evidence.

A BPA followed the second vehicle that drove south, which was a Honda Civic bearing Arizona license plate WRA6F4, on E 55th Street. The BPA activated his emergency lights on E 53rd St and the vehicle came to a complete stop. The BPA exited the Honda Civic, approached the passenger and began to question the driver as to his citizenship. The driver, later identified (ESCALANTE, Junior Bryan) stated he was a United States Citizen from Yuma, Arizona and he was only giving some people a ride. The BPA questioned the other subjects in the Honda Civic as to their citizenship. The front and rear passenger admitted that they were citizens and nationals of Mexico,

3

and that they entered the United States through the desert. One of the passengers later identified as (ALVAREZ-Sanchez, Jose Angel) is a known and previously-arrested footguide who operates in the Yuma Sector Area of Operations.

11. The SUBJECTS' CELLULAR TELEPHONES are currently in the lawful possession of United States Border Patrol (USBP). The SUBJECTS' CELLULAR TELEPHONE were seized during the investigation of the above-described defense. Therefore, I seek this warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

12. The SUBJECTS' CELLULAR TELEPHONE is currently being held in storage at the Yuma Border Patrol Station at 4151 South Avenue A, Yuma, AZ 85365. In my training and experience, I know that the SUBJECTS' CELLULAR TELEPHONE have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECTS' CELLULAR TELEPHONE first came into the possession of the United States Border Patrol.

### III. ITEMS TO BE SEIZED

13. Based upon the facts contained in this Affidavit, your Affiant submits that there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECTS' CELLULAR TELEPHONE.

14. Based upon my knowledge, experience, and training in Alien Smuggling Organization (ASO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that individuals involved in alien smuggling activity tend to:

   a) Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted, including names and nationalities of smuggled aliens, as well as monies owed and/or paid for alien smuggling;
   b) Collect data pertaining to other co-conspirators involved in alien smuggling activity;
   c) Possess and maintain records reflecting bank transactions and/or money transfers relating to alien smuggling activity;

4

d) Maintain collections of records that are in digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target Phones). These records are often maintained for several years in close proximity to the alien smuggler, usually at the individual's residence, to enable the alien smuggler to review the records, which are highly valued;

e) Correspond with and/or meet with other alien smuggling associates to share alien smuggling information and/or materials;

f) Retain correspondence from other alien smuggling co-conspirators relating to alien smuggling activity;

g) Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smugglers have been in contact and/or conducted alien smuggling activity.

15. Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation and with whom I have conferred, I know that ASOs utilize cellular telephones (such as the SUBJECTS' Cellular Telephone) to facilitate alien smuggling activity, and to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of cellular telephones to do so. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including contact names and numbers of alien smuggling associates; call details, including call history, electronic mail (email) messages, text messages and/or text message history; and digital images of alien smuggling associates and/or activity. All of this information can be used to identify and locate alien smuggling associates, identify methods of operation of the ASO, and corroborate other evidence obtained during the course of an investigation.

16. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECTS' CELLULAR TELEPHONE.

## IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

17. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECTS' CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

18. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECTS' CELLULAR TELEPHONES for at least the following reasons:

    a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

    b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files

have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

        19.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECTS' CELLULAR TELEPHONES because:

        a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on

7

a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECTS' CELLULAR TELEPHONE, including the use of computer-assisted scans.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

22.     Your Affiant submits there is probable cause to believe probable cause to believe that the property listed in Attachment A (SUBJECTS' CELLULAR TELEPHONE) contains evidence related to the transportation and harboring of aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii). For this reason, I respectfully request that this Court issue a search warrant authorizing a search of the SUBJECTS' CELLULAR TELEPHONE listed in Attachment A to seize the items of evidence listed in Attachment B.

*[signature: Brian Ramos]*

Border Patrol Agent-Intelligence Brian Ramos
United States Border Patrol

Subscribed and sworn to telephonically this 5th day of February, 2024.

*[signature]*

HONORABLE James F. Metcalf
United States Magistrate Judge